UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ANTHONY MELENDEZ, | : | CIVIL ACTION NO. |
| Plaintiff, | : | 3:10-CV-01187 (JCH) |
| | : | |
| v. | : | |
| | : | |
| CITY OF WATERBURY, et al., | : | FEBRUARY 21, 2012 |
| Defendants. | : | |
| | : | |

**RULING RE: DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT (DOC. NO. 30)**

**I.    INTRODUCTION**

Plaintiff, Anthony Melendez, brings this action against the City of Waterbury, Detective Leonard Conway, and Detective Shane Laferriere (collectively, "defendants")[1], alleging that the defendants violated his right to be free from the use of unreasonable force, as secured by the Fourth Amendment, Fourteenth Amendment, and 42 U.S.C. § 1983.  In addition, Melendez asserts pendent state law claims for assault, battery, intentional infliction of emotional distress, and negligent infliction of emotional distress.

Defendants now move for partial summary judgment.  Defendants first argue that the City of Waterbury (hereafter "the City") is entitled to summary judgment as to the claims against it.  In addition, defendants argue that they are all entitled to summary judgment with regard to Melendez's claim for negligent infliction of emotional distress.

---

[1] Melendez originally brought this claim against three additional police officers, Detective Laffia, Lieutenant Stevenson, and Lieutenant Riddick, as well.  In his Amended Complaint, however, Melendez only named the City of Waterbury, Detective Conway, and Detective Laferriere as defendants, and the three additional officers were subsequently terminated as parties.

1

## II.     STATEMENT OF FACTS

At all times relevant to this action, the City of Waterbury employed defendants Leonard Conway and Shane Laferriere as police officers with the Waterbury Police Department (hereafter "WPD").  L.R. 56(a)(2) Stmt. ¶ 1.  On August 8, 2008, both Conway and Laferriere held the rank of Detective.  Id. at ¶ 2.  On that day, an active arrest warrant existed for the plaintiff, Anthony Melendez, charging him with Risk of Injury to a Minor and Assault in the Third Degree.  Id. at ¶ 3.

Detectives Conway and Laferriere executed service of the arrest warrant on Melendez inside the WPD Detective Bureau on August 8, 2008.  Id. at ¶ 4.  On or around August 12, 2008, Melendez's mother, Elaine Melendez, called the Internal Affairs division of the WPD and alleged that Detectives Conway and Laferriere had subjected Melendez to the use of unreasonable force while he was present at the Detective Bureau.  See id. at ¶ 5.  Detectives Conway and Laferriere denied these allegations.  Id. at ¶ 6.

At all times relevant to this suit, WPD has had in effect a Use of Force Policy, as a part of its Duty Manual.  See id. at ¶ 9.  This Policy is consistent with the provisions of section 53a-22 of the Connecticut General Statutes.  See id. at ¶ 10.  In addition, WPD has in effect an Internal Affairs Policy as part of its Duty Manual, which purports to provide citizens with a "fair and effective avenue for the redress of their legitimate grievances" as well as to protect WPD members "from false allegations of misconduct and provide[] them with due process safeguards."  See id. at ¶ 11–12.

The WPD Use of Force Policy requires officers to notify their Supervisor immediately after using any force--other than the mere taking into custody--and to file a

Use of Force report. See id. at ¶ 13. Each such report is reviewed by the WPD chain of command. See id. at ¶ 15. The Internal Affairs Division conducted an investigation into the allegations of Melendez's mother regarding Conway and Laferriere, and issued a Final Report containing its findings. See id. at ¶ 7–8.

## III.   STANDARD OF REVIEW

A motion for summary judgment "may properly be granted . . . only where there is no genuine issue of material fact to be tried, and the facts as to which there is no such issue warrant judgment for the moving party as a matter of law." In re Dana Corp., 574 F.3d 129, 151 (2d Cir. 2009). Thus, the role of a district court in considering such a motion "is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." Id. In making this determination, the trial court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought. See Loeffler v. Staten Island Univ. Hosp., 582 F.3d 268, 274 (2d Cir. 2009).

"[T]he moving party bears the burden of showing that he or she is entitled to summary judgment." United Transp. Union v. Nat'l R.R. Passenger Corp., 588 F.3d 805, 809 (2d Cir. 2009). Once the moving party has satisfied that burden, in order to defeat the motion, "the party opposing summary judgment . . . must set forth 'specific facts' demonstrating that there is 'a genuine issue for trial.'" Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009) (quoting Fed. R. Civ. P. 56(e)). "A dispute about a 'genuine issue' exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor." Beyer v. County of Nassau, 524 F.3d 160, 163 (2d Cir.2008) (quoting Guilbert v. Gardner, 480 F.3d 140, 145 (2d

Cir. 2007)); see also Havey v. Homebound Mortg., Inc., 547 F.3d 158, 163 (2d Cir. 2008) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)) (stating that a non-moving party must point to more than a mere "scintilla" of evidence in order to defeat a motion for summary judgment).

## IV.   DISCUSSION

Defendants first argue that they are entitled to summary judgment as to all claims against the City because Melendez cannot provide any material facts to support his constitutional claims against the City.[2]  Then, defendants argue that they are entitled to summary judgment with regard to Melendez's claim of negligent infliction of emotional distress because a plaintiff may not assert both negligent and intentional infliction of emotional distress.  Melendez argues that material issues of fact, including the City's admissions, prevent summary judgment.

### A.   42 U.S.C. § 1983 Claims against the City

Section 1983 of the United States Code provides, in relevant part, "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . ."  While a municipality is considered a "person" pursuant to section 1983, a municipality may not be held liable under section 1983, under a theory of respondeat superior, simply because it employs a tortfeasor.  See Bd. of the Cnty. Comm'rs of Bryan Cnty., Oklahoma v. Brown, 520 U.S.

---

[2] Defendants address various arguments Melendez could base his section 1983 claim on, including failure to maintain a policy, failure to train, failure to investigate claims and discipline, failure to supervise, and negligent hiring.  As Melendez appears to focus his arguments on the WPD's alleged negligent hiring and failure to train, the court will not address those arguments that defendants raised, but to which Melendez did not respond.

383, 403 (1997). Rather, to impose liability upon a municipality, a plaintiff must demonstrate a municipal "policy" or "custom" that caused the plaintiff's injury. See id. This policy need not be an explicitly stated rule or regulation; however, a single incident is generally insufficient to demonstrate a policy, especially where the incident only involved individuals without policy-making authority. See Ricciuti v. N.Y.C. Transit Auth., 941 F.2d 119, 123 (2d Cir. 1991).

To meet this burden, the plaintiff must demonstrate that, "through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." See Bd. of the Cnty. Comm'rs of Bryan Cnty., 520 U.S. at 404 (emphasis in original). A plaintiff must show that "the municipal action was taken with the requisite degree of culpability" and that "a direct causal link [exists] between the municipal action and the deprivation of federal rights." See id.

### 1. Negligent Hiring

Defendants assert that Melendez has not proffered any material evidence to show that the City was negligent in its hiring process or its retention of officers. See Mem. Supp. Partial Summ. J. at 18. In response, Melendez first argues that the City has a "custom, policy, or practice of failing to properly and adequately select police officers." See Mem. Opp. Summ. J. at 8. Courts have recognized that a municipality may be held liable under section 1983 for a negligent hiring decision; however, "[t]o prevent municipal liability for a hiring decision from collapsing into respondeat superior liability, a court must carefully test the link between the policymaker's inadequate decision and the particular injury alleged." See Bd. of Cnty. Comm'rs of Bryan Cnty., 520 U.S. at 410. To show that this link exists, "[a] plaintiff must demonstrate that a

municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision." See id. at 411.  An official's failure to adequately scrutinize an applicant's background will only constitute deliberate indifference where adequate scrutiny of the applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right.  See id.  That is, there must be a strong connection between the particular applicant the plaintiff challenges and the specific constitutional violation alleged.  See id. at 412 ("[I]t must depend on a finding that this officer was highly likely to inflict the particular injury suffered by the plaintiff.") (emphasis in original).

     Here, Melendez points to Detective Laferriere's background check as evidence that the WPD "has a custom, policy or practice of hiring people prone to violence, dishonesty and psychological disorders, in reckless disregard for the rights of its citizens."  See Mem. Opp. Summ. J. at 8.  In support of this assertion, Melendez points to the WPD's background investigation into Detective Laferriere, conducted in January 2000.  See Pl.'s Ex. XI.  The WPD's background investigation revealed that Laferriere was arrested in 1990 on a charge of Breach of Peace; in 1992 on a charge of sixth degree larceny and third degree assault; and in 1992 on a charge of threatening.  See id.  Each of these charges was dropped, either through dismissal or nolle.  Id.  In addition, the investigation revealed that Laferriere had four moving violations on his driving record, and that Laferriere had paid the fines for each of them.  See id.  Finally, Laferriere admitted that he had been eliminated from the WPD hiring process in 1996 after he had failed the psychological examination.  See id.

To test the link between Laferriere's hiring and Melendez's alleged injury, the court must determine whether Melendez points to sufficient evidence such that a reasonable jury could determine that the WPD should have concluded that Laferriere's use of excessive force would be a plainly obvious consequence of its decision to hire him.  See Bd. of the Cnty. Comm'rs of Bryan Cnty., 520 U.S. at 412–13.  It is not enough for Melendez to show that the WPD hired Laferriere with knowledge of his record.  See id. at 414–15.  Melendez must demonstrate that the WPD was deliberately indifferent to Melendez's constitutional right, not to Laferriere's record.  See id. (determining that insufficient evidence exists to demonstrate deliberate indifference where the officer pled guilty to three misdemeanors, nine moving violations, a charge of driving with a suspended license, and being in actual physical control of a vehicle while intoxicated).

The evidence Melendez points to is insufficient for a jury to reasonably determine that the WPD disregarded a known or obvious risk of injury in hiring Laferriere.  First, each of Laferriere's arrests occurred at least eight years prior to the WPD's hiring decision.  See Pl.'s Ex. XI.  More importantly, in each case, the charges were either dismissed or nolled.  See id.  Finally, Melendez offers no evidence as to the reason Laferriere failed the psychological test, other than Laferriere's speculation that the results were influenced by the reviewer's compensation structure.  See Pl.'s Ex. X at 30.  This evidence is insufficient to demonstrate that Laferriere's use of excessive force would be the plainly obvious consequence of his hiring.  On the basis of the record before the court, a reasonable jury could not conclude that the WPD's decision to hire

7

Laferriere reflected deliberate indifference to the obvious risk that a use of excessive force would follow.  See Bd. of Cnty. Comm'rs of Bryan Cnty., 520 U.S. at 415.

### 2. Failure to Train

Next, Defendants contend that Melendez has not presented any evidence that "any perceived shortcomings on the part of the individual Defendant police officers were the result of a faulty training program rather than the negligent administration of a sound program or other unrelated circumstances."  See Mem. Supp. Partial Mot. Summ. J. at 9.  Melendez appears to argue in response that the City is liable pursuant to section 1983 because it failed to properly train Detectives Conway and Laferriere how to deal with individuals who are mentally or emotionally disturbed, or intoxicated.  See Mem. Opp. Summ. J. at 10.

A municipality may be liable for failing to train its employees "where it acts with deliberate indifference in disregarding the risk that its employees will unconstitutionally apply its policies without more training."  See Amnesty Am. V. Town of West Hartford, 361 F.3d 113, 129 (2d Cir. 2004).  In addition to demonstrating deliberate indifference, a plaintiff must "identify a specific deficiency in the city's training program and establish that that deficiency is 'closely related to the ultimate injury,' such that it 'actually caused' the constitutional deprivation."  See id. (quoting City of Canton, Ohio v. Harris, 489 U.S. 378, 391 (1989)).  A particular officer's insufficient training will not alone suffice to assign liability to a city, as other factors may have caused the officer's shortcomings. See City of Canton, 489 U.S. at 391.  Similarly, an adequately trained officer's occasional mistake does not provide a legal basis to hold the city liable.  See id.  At the summary judgment stage, it is the plaintiff's responsibility to "proffer evidence from

8

which a reasonable factfinder could conclude that the training program was actually inadequate, and that the inadequacy was closely related to the violation." See Amnesty Am., 361 F.3d at 130, n. 10. Absent such evidence, a plaintiff may not succeed on a failure to train claim. See id. ("It is impossible to prevail on a claim that the Town's training program was inadequate without any evidence as to . . . how the training was conducted, how better or different training could have prevented the challenged conduct, or how a hypothetically well-trained officer would have acted under the circumstances . . . .") (internal quotations omitted).

      Here, Melendez appears to argue that Conway and Laferriere's failure to comply with WPD's policy regarding mentally ill or intoxicated individuals and failure to involve the crisis intervention team to assist with Melendez demonstrate the existence of "unwritten customs, policies or procedures of not following the written customs, policies or procedures and/or not adequately training and supervising its employees." See Mem. Opp. Summ. J. at 11. Melendez fails, however, to point to any evidence regarding WPD's training program, or specific deficiencies in the program that were closely related to the alleged violation. Consequently, Melendez fails to proffer sufficient evidence from which a reasonable jury could conclude that the existing training program was inadequate.

      3.    Admissions

Finally, Melendez appears to argue that the City's admissions are sufficient to demonstrate that Detectives Conway and Laferriere acted pursuant to WPD's custom, policy, or practice. See Mem. Opp. Summ. J. at 9–10. Where a municipality unequivocally and specifically admits that individuals acted in accordance with custom,

9

policy, and practice, a jury may return a verdict holding the municipality liable. See Russo v. City of Bridgeport, 2007 U.S. App. LEXIS 16171, at *41–42, n. 15 (2d Cir. Feb. 27, 2007) ("We note that the City has admitted . . . that 'all individual defendants . . . acted toward the Plaintiff in accordance with custom, policy and practice.' We leave it for the district court to consider, in the first instance, the significance of this concession."); Russo v. City of Bridgeport, 2008 WL 2167881, at *1 (D. Conn. May 21, 2008).

Here, in response to Melendez's request that it admit that "at all relevant times, the individual Defendants acted toward the Plaintiff in accordance with a custom, policy or practice of the Waterbury Police Department," the City responded, "The Defendants admit that they acted lawfully towards the Plaintiff. The Defendants cannot admit or deny that they acted toward the Plaintiff in accordance with a custom, policy or practice of the Waterbury Police Department as this is a factual and legal conclusion to be litigated and determined at the time of trial." See Pl.'s Ex. IV. Melendez argues, however, that the City's admission that "at all relevant times, the individual Defendants acted toward Plaintiff in accordance with their training and experience from the Waterbury Police Department" is akin to the admission in Russo. See Mem. Opp. Summ. J. at 9.

The admission that Conway and Laferriere acted "in accordance with their training and experience," however, is distinguishable from a specific admission that they acted in accordance with a custom, policy, or practice of the WPD. The inclusion of the Detectives' "experience" connotes an individualized consideration, rather than an official policy. Allowing municipal liability on the basis of this admission alone would amount to

allowing liability on the basis of respondeat superior.  In addition, the City's specific refusal to admit that the Detectives acted in accordance with a custom, policy, or practice distinguishes this case from Russo.  Consequently, this admission alone is insufficient to raise a material issue of fact to support Melendez's claims of municipal liability.

      B.      Negligent Infliction of Emotional Distress

Defendants also contend that they are entitled to summary judgment as to Melendez's claim of negligent infliction of emotional distress because a plaintiff may not prevail on a negligence claim where he has also alleged intentional conduct.  See Mem. Supp. Mot. Partial Summ. J. at 18–19.  In support of this argument, defendants cite to a case that relies on New York law, and a case that relies on federal law.  See id.  In contrast, Melendez bases his claim of negligent infliction of emotional distress on Connecticut law.  See Amd. Compl. ¶ 43.  In Connecticut, a plaintiff may assert both negligent and intentional infliction of emotional distress.  See, e.g., Balogh v. City of Shelton, 2002 WL 523225, at *7–8, 10 (Conn. Super. Mar. 18, 2002) (denying summary judgment with regard to negligent infliction of emotional distress and intentional infliction of emotional distress).

Finally, defendants appear to argue they are entitled to qualified immunity as to any tort liability.  See Mem. Supp. Mot. Partial Summ. J. at 19.  Where material facts are in dispute with regard to a determination of whether a particular use of force was reasonable, summary judgment on qualified immunity grounds is not appropriate.  See Kerman v. City of New York, 261 F.3d 229, 240 (2d Cir. 2001).  Here, the parties clearly contest whether the Detectives employed reasonable force during their interaction with

11

Melendez. Consequently, defendants are not entitled to summary judgment as to Melendez's claim for negligent infliction of emotional distress.

## V.  CONCLUSION

For the reasons set forth above, Defendants' Motion for Partial Summary Judgment (Doc. No. 30) is **granted in part** with regard to Melendez's claims pursuant to 42 U.S.C. § 1983 against the City of Waterbury, and **denied in part** with regard to his claim of negligent infliction of emotional distress.

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 21st day of February, 2012.

       /s/ Janet C. Hall
Janet C. Hall
United States District Judge